## McDUFFIE v. FINANCIER CO.

(Supreme Court, Appellate Division, First Department.   December 10, 1909.)

1. CORPORATIONS (§ 405*)—OFFICERS—AUTHORITY OF PRESIDENT.

    In a business corporation, where the business is substantially left in the control of its president, he has power to bind the company in the general and ordinary conduct of its business.

    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1603; Dec. Dig. § 405.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. ACCOUNT STATED (§ 19\*)—SUFFICIENCY OF EVIDENCE.**

In an action against a corporation by a former employé to recover on an instrument termed an "account stated" for money paid to the president of the corporation to invest in stocks, upon his promise that the money should be returned to the employé, and money furnished for the corporation's pay roll, and for money promised by the president in consideration of plaintiff's remaining in the corporation's employ for a time after she had decided to leave, evidence *held* sufficient to go to the jury on plaintiff's right to recover at least the amount actually advanced by her to the president of the corporation.

[Ed. Note.—For other cases, see Account Stated, Dec. Dig. § 19.\*]

Laughlin and Scott, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Katherine McDuffie against the Financier Company. There was a directed verdict granting inadequate relief, and plaintiff appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, McLAUGHLIN, and SCOTT, JJ.

Theorn G. Strong, for appellant.

Henry B. Twombley, for respondent.

INGRAHAM, J. The plaintiff was in the employ of the defendant, a corporation engaged in financing or procuring capital for other corporations and business. Among the corporations which were being financed by the defendant was the Ewing-Essick Engine Company and the Ewing Publishing Company. Plaintiff testified that the president of the defendant, who was in entire control of its business, recommended to her, who was employed by the defendant as a stenographer, that she should invest some of her earnings in the stocks of these two companies. The president of the defendant told her that these stocks would be all right; that they were sure, because they were being financed by the defendant. Plaintiff then gave the president of the defendant $2,000 to invest in these two corporations. At another time the plaintiff delivered to the president of the defendant company $1,000 in money, which he wanted to put in some bank stock in which the defendant was interested. He assured the plaintiff that if she would give him the money that it would be returned to her. In one instance he told the plaintiff that he wanted $500 for the defendant's pay roll, which the plaintiff advanced, and received an order on the company for the amount. There was another advance of $500 by the plaintiff to the defendant, making in all $4,000. Subsequently the plaintiff told Mr. Ewing, the president of the defendant, that she wished to leave the employ of the company, and desired the return of the money that she had advanced. In reply to that the president of the defendant said:

"Miss McDuffie, I do not want you to leave the company. I know what you have said is true, and the company will return to you everything that you have put into it—everything. I know that you have done a good deal in the office of the company, besides having done my regular work, and if you will agree to stay at least until the beginning of next year, when the company will be in better shape, all of this will be returned to you; and to make up for the lack of interest which you have not got I will give you an order on the company for $1,000 more than you really have paid into the company."

The plaintiff then returned to the president of the company all the orders that she had and all the stock, and the president issued a new order on the company, covering everything that plaintiff had given to the company, amounting to $5,000. The old orders were all marked paid and destroyed. This order then given to the plaintiff was then produced and offered in evidence, and was as follows:

"The Financier Company. 22 Thames Street.

"New York, June 11, 1906.

"Pay to the order of Miss K. McDuffie five thousand dollars ($5,000.00), with interest at 6% from date.          J. E. Ewing, Prest."

Indorsed on this was "Interest pd. to Dec. 11, 1906," and on the margin was written:

"This includes Ewing-Essick Engine Co. and Ewing Pub. Co. investments, profit on all different stock investments, and deposits at different times in my personal bank account, and is payable with interest at 6%."

At the bottom of this instrument was written:

"I hereby agree that payment of the above will not be demanded until January 1, 1908.

"[Signed]  Miss K. McDuffie."

Mr. Ewing, the president of the company, died February 27, 1907. After his death the plaintiff presented to his successor as president this order or check, when the president said to the plaintiff that he would neither deny nor dispute it—to give him time to turn around; and the plaintiff agreed that she would not do anything until the first of the next year, and in consequence of that understanding they dictated the indorsement upon this instrument that she agreed not to demand payment until January 1, 1908. The indorsement of interest paid on December 11, 1906, was in Ewing's handwriting. Hazen, Ewing's successor as president of the company, testified that when the plaintiff presented these checks to him he told her that there was no possible chance to get any money out of the defendant, or out of the estate of Ewing at that time, and that he would refer it to Mr. Compton and the attorney for the company. It was shown that the method by which the company paid its obligations and transacted its business was for the president to give an order or draft on the company in the form given to the plaintiff, and that on presentation of these drafts to the president of the company they were paid.

It seems to me that upon this evidence that there was a question presented as to the right of the plaintiff to recover at least the amount that she had paid to Ewing as president of the company, and the liability for which he recognized by giving the draft in question. This defendant, which was financing these other companies, had recommended to the plaintiff, an employé, to invest her money in the stocks of the companies that the defendant was financing, with a promise that the money should be returned to her. She delivered back the stock, asked for the return of her money, and was given this obligation of the company as a compliance with that understanding. The company recognized it by paying interest on it up to December 11th, shortly before Ewing's death. In business companies of this kind, where the business is substantially left in the control of its president, the presi-

dent certainly has the power to bind the company in the general and ordinary conduct of its business. The company had received the plaintiff's money, had delivered to her stock for it, had received back the stock, and given her an obligation to repay her the money; and certainly there arose a legal liability of the company to the plaintiff to fulfill that obligation. The complaint alleged that the defendant had become indebted to the plaintiff in this sum of money, and that the defendant had agreed to pay to the plaintiff this sum of $5,000, in consideration of the plaintiff continuing to remain in the service of the company and render services to it, and to carry out that agreement made and executed this instrument in writing, a copy of which is set up in the complaint.

When the testimony was all in the defendant moved to dismiss the complaint. In answer to that motion the court said to the defendant:

"You have moved to dismiss, and you have raised the point that there was not any evidence of an account stated, and I have not had time to look into it; but one thing is clear: That there is evidence that this company owes her $1,000, with interest, two years and three months' interest, and that would be $1,135. I have considered the case carefully, and I was disposed to direct a verdict against your client for $1,135."

Defendant's counsel then withdrew the objection, on the ground that it was not an account stated, when the court directed a verdict against the defendant for $1,135. To that the plaintiff's counsel excepted. The plaintiff then requested the court to submit to the jury the question as to whether there was an account stated between the plaintiff and defendant, evidenced by plaintiff's Exhibit 2, which was denied, and plaintiff excepted. Plaintiff then requested the court to submit to the jury whether there was an agreement between the plaintiff and defendant that the plaintiff would agree to forbear to prosecute her claim for one year on or about May 10, 1907, which was denied, and plaintiff excepted. The plaintiff made other requests to submit various questions in the case to the jury, all of which were denied.

I think there was a question for the jury as to whether she could recover, either for the full amount of this instrument, or at any rate to recover back the amount that was actually advanced to the president on his promise to repay it, to carry out which he had given this instrument in question, and I do not think the verdict should stand. The judgment should therefore be reversed, and a new trial ordered.

Judgment and order reversed, and new trial ordered; costs to appellant to abide event.

PATTERSON, P. J., and McLAUGHLIN, J., concur. LAUGHLIN, J., dissents.

SCOTT, J. (dissenting). This is an action upon what is called an "account stated." The defendant is a domestic corporation, incorporated under the act of 1848 for the purpose of "printing and publishing books, pamphlets, and newspapers, and selling the same, and particularly of printing, publishing, and selling a newspaper devoted to financial matters, to be known as the 'Financier,' and of carrying on such business as may be incidental thereto and connected therewith."

Plaintiff was a stenographer in the employ of the company, of which J. E. Ewing was president.

The so-called "account stated" consists of an order drawn on the corporation by Ewing, its president, for the sum of $5,000. It was not accepted by the company, and in fact was not presented until after Ewing's death. It appears from plaintiff's testimony that Ewing from time to time advised her to make certain investments, and received from her at different times $3,000, with which he purchased for her stock in two corporations, known as the Ewing-Essick Engine Company and the Ewing Publishing Company, and some kind of interest in a Boston bank. None of these corporations belonged to defendant, and so far as appears defendant received no benefit from plaintiff's investments therein. Plaintiff also loaned Ewing two sums, of $500 each, which he in turn advanced to defendant to pay salaries. The investments turned out to be unprofitable, and about June, 1906, plaintiff expressed a desire to have her money back, and to leave defendant's employ. Ewing thereupon, in order to satisfy her, gave her the paper relied on as an account stated.

The sum of $5,000 was made up of the $3,000 given Ewing by plaintiff for investment, the $1,000 given for payment of wages, and an additional sum of $1,000, which Ewing said was to cover the cost of interest. Ewing died in 1907, and plaintiff presented claims against the company, aggregating $7,000, of which $2,000 was concededly due from Ewing personally, and was paid. The company asked for time to investigate the present claim, and made some sort of a proposition to settle it; but nothing came of that. The court, with the acquiescence of defendant, directed a verdict for the $1,000 advanced and used to pay wages, with interest. Plaintiff, being dissatisfied with this, appeals.

The plaintiff's own evidence makes it abundantly clear that the company never owed plaintiff any part of the $5,000, except possibly the $1,000 which went to pay salaries, and for which she has a judgment. She says over and over again that the $3,000 was given to Ewing to invest for her, and that he did invest it. No authority whatever was shown in Ewing to bind the company to repay her what the company did not owe, and in fact the order signed by him does not even purport to be an obligation of the company.

The judgment is at least as favorable as, if not more so than, plaintiff was entitled to, and should be affirmed, with costs.